**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **RODNEY LOVE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 26-cv-1085-DWD** |
| | ) | |
| **TACT TEAM,** | ) | |
| **IDOC,** | ) | |
| **JOHN DOE (correctional officer),** | ) | |
| **REBECCA RIGGS,** | ) | |
| **LATOYA HUGHES,** | ) | |
| **CHIEF ADMINISTRATIVE OFFICER,** | ) | |
| **INTERNAL AFFAIRS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Rodney Love, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Pinckneyville Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Plaintiff alleges his rights were violated during a strip search. Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se*

complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**The Complaint**

Plaintiff alleges that Defendant John Doe, a member of the tact team, violated his rights by forcing him to strip naked for a search in front of male and female staff and other inmates. (Doc. 1 at 7). Plaintiff claims he was forced to display his genitals and rectum, and he was threatened with violence if he failed to comply. (*Id.*). Plaintiff goes on to allege that IDOC and the tact team failed to train staff or trained staff to violate inmates' rights. Plaintiff alleges that Defendants Riggs and Hughes violated his rights by failing to investigate his claims about the strip search. (*Id.* at 8). Plaintiff alleges the Chief Administrative Officer was aware of the incident, and he or she notified internal affairs but failed to direct the preservation of evidence. Furthermore, Plaintiff faults internal affairs for failing to gather evidence or interview him.

As relief, Plaintiff asks that tact team members retrain on inmate rights and wear body cameras. (Doc. 1 at 9). He also seeks financial compensation, and he asks that staff be directed to interview him about the incident. (*Id.*).

Based on the allegations in the Complaint, the Court will designate the following claim:

**Claim 1: Eighth Amendment claim against John Doe for the strip search**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned

in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See* *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

**Analysis**

As an initial matter, Plaintiff has failed to state a claim against Defendants IDOC, tact team, Riggs, Hughes, Chief Administrative Officer and internal affairs. As to defendants IDOC, tact team, and internal affairs, Plaintiff's allegations target entire groups of prison employees or the department itself. This is not a viable pleading strategy under § 1983 because § 1983 liability generally is only appropriate against a person for their individual conduct. *See e.g.*, *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989) (Section 1983 does not provide a federal forum for litigants who seek a remedy against a state for alleged deprivations of civil liberties); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (the allegation that one or more prison employees caused or participated in a harm is not sufficient to establish individual liability under § 1983).

As for Defendants Riggs, Hughes, and the Chief Administrative Officer, Plaintiff alleges these defendants learned of his issue and did not appropriately investigate. He does not explain how these three learned of his situation, and he does not explain Riggs or Hughes' response, though he states the Chief Administrative Officer delegated the matter to internal affairs. High level prison administrators cannot be held liable merely because they hold a position of authority, nor because they merely processed a grievance without having any involvement in the underlying conduct. *See e.g.*, *Burks v. Raemisch*,

555 F.3d 592, 595 (7th Cir. 2009) (not every public official who knows of a problem has an obligation to fix it and officials are entitled to delegate tasks to other staff); *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (the mere mishandling of a grievance by someone who did not cause or participate in the underlying harm is insufficient to state a claim). Under *Burks* and *Owens*, Plaintiff's allegations against Riggs, Hughes, and the Chief Administrative Officer are insufficient to proceed.

**Claim 1**

A violation of the Eighth Amendment consists of two elements: (1) the injury must be objectively serious enough to have deprived the inmate of the minimal civilized measure of life's necessities, and (2) the prison official must have acted with deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "There is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). Strip searches are generally permissible in the prison context if conducted for a legitimate penological reason. *See id.* However, a strip search will violate the Eighth Amendment if it is "totally without penological justification" or "conducted in a harassing manner intended to humiliate and inflict psychological pain." *Id.*; *see also* *Mays v. Springborn*, 575 F.3d 643, 649-50 (7th Cir. 2009) (strip searches done in view of other inmates, in a cold room, by guards who did not regularly change latex gloves, and who sometimes made demeaning comments, were sufficient to proceed to a jury trial).

In this case, Plaintiff does not explain why a strip search was conducted, though he mentions the tact team, so it is possible the search arose during an ordinary search of the prison, which would provide some level of justification. Regardless of whether there was a legitimate reason to conduct the search, Plaintiff alleges that John Doe conducted the search in open view of male and female staff, as well as other guards. This bears enough similarity to *Mays v. Springborn* at this preliminary juncture to warrant allowing the claim to proceed.

Plaintiff already provided a limited physical description of John Doe on page 3 of his complaint in the listing of defendants, indicating the officer is a "big guy white male 250-300 pounds." However, he does not give a date or location for the search, nor does he include any other identifying factors such as facial hair, hair color, nicknames, shift assignment, or any other identifying factors. Plaintiff will be allowed to proceed on Claim 1 against John Doe, but he must supply more information about the strip search within 21 days so that the Warden has adequate information to assist with John Doe identification.

## MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff argues that he is in segregation and thus cannot access needed legal materials. (Doc. 4 at 1). He also contends that he lacks regular access to commissary and cannot secure adequate writing supplies. (*Id.*). He contends he will need to be able to do research to overcome summary judgment. (*Id.*). When confronted with a request under § 1915(e)(1) for recruited counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively

precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself? *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007). The first inquiry "requires the indigent litigant to reasonably attempt to get a lawyer." *Thomas v. Wardell*, 951 F.3d 854, 859 (7th Cir. 2020). Determining whether a plaintiff has made reasonable efforts to recruit counsel himself "is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (citations omitted). Plaintiff does not say anything at all about his own efforts to recruit counsel, and he has not provided any proof that he attempted to contact counsel. As such, his motion must be denied without prejudice. If Plaintiff later reapplies for counsel, he must include proof he contacted at least 3 attorneys, and he must better describe his difficulty representing himself in this case.

**Disposition**

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) may proceed against John Doe correctional officer. All other allegations against all other Defendants are dismissed as insufficient to state a claim, and the Clerk of Court shall **TERMINATE** Defendants IDOC, tact team, Riggs, Hughes, Chief Administrative Officer, and internal affairs. The Clerk shall **ADD** the Warden of Pinckneyville in official capacity only to identify John Doe.

Plaintiff is **DIRECTED to file a notice within 21 days** giving the Court as much descriptive information (nicknames, hair color, height, etc.) as possible about John Doe so that the Warden can assist in identifying this person by name. **Plaintiff must include**

**a date and location for the strip search.** Once Plaintiff submits his notice, the Court will set a deadline for the Warden of Pinckneyville to respond with identifying information.

The Clerk of Court is **DIRECTED** to prepare for the Warden of Pinckneyville (Warden—official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

Plaintiff's Motion for Recruitment of Counsel (Doc. 4) is **DENIED** without prejudice.

**IT IS SO ORDERED.**

Dated: October 26, 2026

Judge Dugan

Digitally signed by Judge Dugan
Date: 2026.10.26 08:30:50 -05'00'

DAVID W. DUGAN
United States District Judge

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.